The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Hedrick. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with minor modifications.
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties entered into a Pre-Trial Agreement, incorporated herein by reference.
2. Plaintiff was employed by defendant Reeves Brothers from 9 August 1962 to 3 January 1989. At all relevant times, defendant Liberty Mutual provided workers compensation coverage for defendant Reeves Brothers.
3. Plaintiff was employed by defendant Foamex from 4 January 1989 to 9 June 1995. During plaintiffs employment, defendant Foamex was self-insured for workers compensation, with Crawford and Company administering claims for said employer.
4. The parties were bound by and subject to the provisions of the North Carolina Workers Compensation Act, the employee-employer relationship existed between plaintiff and defendant-employers and defendant-employers regularly employed more than three employees.
5. At the hearing before the former Deputy Commissioner, the parties introduced into the record the following documents:
(a) Exhibit A — Medical records of Dr. Fred Dula;
(b) Exhibit B — Medical records of Dr. Albert Curseen;
(c) Exhibit C — Plaintiffs social security record;
(d) Exhibit D — Asbestos removal permit;
 (e) Exhibit E — Medical records of Dr. A. Gray Bullard.
Defendants stipulated to the authenticity of plaintiffs medical records but not the truth of the opinions and conclusions stated therein. Furthermore, the parties subsequently amended Exhibit D to include the complete asbestos removal permit.
6. The depositions of Dr. David Allen Hayes, Dr. Frederick M. Dula, Dr. A. Gray Bullard, Dr. Albert F. Curseen and Jimmy Sherrill are a part of the evidentiary record.
 ***********
Based upon all of the evidence of record and upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. Plaintiff was 58 years of age at the time of the hearing before the Deputy Commissioner. Furthermore, he was employed by defendant Reeves Brothers from 9 August 1962 to 3 January 1989 and by defendant Foamex from 4 January 1989 to 9 June 1995.
2. Defendant Reeves Brothers formerly owned two manufacturing plants in Cornelius, North Carolina. One plant, referred to as the "old plant, was located in downtown Cornelius. A second facility, referred to as the "new plant, was located on Highway 115, near Cornelius. Defendant Foamex completed acquisition of the Reeves Brothers plants on 4 January 1989. Defendant Foamex never operated the old plant, which was eventually demolished. At the time of the hearing before the Deputy Commissioner, defendant Foamex continued to operate the plant on Highway 115. The two plants, now one, manufactured polyurethane foam.
3. Plaintiffs employment history prior to joining Reeves Brothers in 1962 included installing sewage tanks for Corbin Construction. In addition, plaintiff worked for Fiske Carter Company cleaning up an old cotton mill in Cornelius. This job exposed plaintiff to a lot of insulated pipe. Plaintiff also worked for Chil, Inc. installing windows. Furthermore, plaintiff operated machinery for Mooresville Iron Works in an old building with exposed insulation.
4. Plaintiff has also been in business with his sons for many years purchasing old houses and mobile homes and remodeling them for use as rental properties. During the renovation of old houses, plaintiff has been exposed to old insulation, wallboard, floor tile and ceiling tile. He has worked with old appliances, heating systems and roofing materials, which he acknowledged may have involved asbestos-containing materials. At the time of the hearing before the Deputy Commissioner, plaintiff and his sons owned and maintained 25-30 dwellings, most of which were older structures. Plaintiff also performed mechanic work on his own vehicles and for other individuals for many years. This work included brake and clutch repair and exposed plaintiff to asbestos.
5. Plaintiff began employment with defendant Reeves Brothers in June 1962, operating a peeling machine. In approximately 1968, he moved into maintenance. As a maintenance employee, plaintiff worked on machinery and helped maintain two overhead cranes. Plaintiff had to clean and adjust brake shoes on the cranes and replace brake shoes. Plaintiff contended these brake shoes contained asbestos, although he acknowledged that he has no expertise in identifying asbestos-containing materials. Plaintiff worked on steam lines and other piping, which utilized gaskets. Many of the gaskets were made with Teflon. Plaintiff alleged that he cut other gaskets from sheet material he thought contained asbestos, but acknowledged this work did not create dust. Plaintiff contended that his work required him to help with annual boiler inspections. The only gasket material with which he worked on boilers was a rope-type material of unknown composition used around the door.
6. Bill Overcash worked with plaintiff at Reeves Brothers from March 1969 to March 1982 and supervised him and approximately 39 other maintenance employees. Mr. Overcash could not confirm that the brake shoes used on overhead cranes were made with asbestos and had no knowledge of the composition of gaskets used at the facility. He stated that plaintiff helped with boiler inspections but that the boilers had insulation covered with metal "skin so that the employees were not exposed to the insulation as part of their work. However, plaintiff might have replaced insulation on the steam lines coming off the header of the boiler.
7. Dave Cook worked with plaintiff at Reeves Brothers from August 1969, to December 1979, or January 1980, as a maintenance mechanic and lead man. He could not recall what materials were used in the brake shoes installed on overhead cranes. He acknowledged that all materials used at the Reeves Brothers facility were ordered by Mr. Morgan.
8. Charles Martin worked with plaintiff from 1973-1995. He could not identify asbestos and did not know anything about the composition of brake shoes, gaskets, sheet material or insulation.
9. Steve Knox worked with plaintiff from 1 September 1976 until 1996. Mr. Knox serves as the shop chairman for the union at Foamex and is a member of the unions international safety committee. The union never raised any issues about asbestos or asbestos exposure with defendant employers. Mr. Knox met with plaintiffs attorney prior to the hearing before the Deputy Commissioner and following that meeting went to the new plant specifically to search for asbestos-containing materials. After searching the plant thoroughly, Mr. Knox located a box, weathered from years on the shelf, which contained packing material. The box had "asbestos printed on the outside. Mr. Knox also spoke directly with the plant manager concerning the presence of asbestos at the site and was reassured that there was no asbestos at the facility.
10. Bob Morgan served as the purchasing agent for Reeves Brothers from 1970-1989 and continues in the same position with Foamex. When Foamex acquired the new plant from Reeves Brothers, there was a vacant brick house located on the premises. Foamex used the house as a personnel office for about one year until April 1991. No maintenance work was done on the house after that time and it remained vacant again until 1993 when it was demolished. Mr. Morgan arranged to have the house removed. The house was tested for asbestos and was found to contain 453 square feet of vinyl/asbestos tile and approximately 10 feet of asbestos duct tape. The demolition contractor removed these materials between 13 and 15 December 1993. No Foamex employees were used on the project. Plaintiff did not perform any work at the house that exposed him to asbestos while the house was used by Foamex. There is no evidence plaintiff worked at the house while it was owned by Reeves Brothers.
11. As the purchasing agent for Foamex, Mr. Morgan handled all projects involving outside contractors. According to Mr. Morgan, Foamex would have used an outside contractor to maintain the heating system in the house. Other than for the old house, Foamex has never required an asbestos removal permit for insulation, equipment, floor tile, ceiling tile, or any other material at the facility. Furthermore, Mr. Morgan has never ordered an asbestos-containing product of any type for use at the new plant since it was purchased by Foamex. He also had no recollection of ordering asbestos-containing products while serving as purchase agent for Reeves Brothers.
12. Larry Walker has served as the maintenance superintendent at the new plant since September 1992. Prior to his employment with Foamex, Mr. Walker worked with Daniel Construction Company where he learned the identifying characteristics of asbestos. During his tenure with Foamex, Mr. Walker has worked throughout the new plant and never identified anything that appeared suspicious for asbestos. According to Mr. Walker, none of the employees under his supervision ever worked on the brick house located at the Highway 115 facility. Since Mr. Walker joined Foamex, all boiler and refractory work has been handled by a certified contractor. Additionally, crane maintenance has been handled by the vendor of that equipment. Furthermore, Mr. Walker was informed by the service technician that brake shoes used on the crane do not contain asbestos.
13. Jimmy Sherrill served as project engineer with Reeves Brothers and later Foamex for approximately 28 years. Mr. Sherrill designed, installed and modified manufacturing equipment. He performed most of his work at the new plant but worked at the old plant frequently as well. During Mr. Sherrills employment with defendant-employers, none of the equipment he designed, installed, or modified used asbestos components. He never purchased any asbestos-containing material. The insulation used on manufacturing equipment did not contain asbestos. Mr. Sherrill never ordered or used asbestos in any form as the project manager with Reeves Brothers at the old or new facilities.
14. Plaintiff was not exposed to the hazards of asbestos during his employment with defendant Foamex.
15. Plaintiff was not exposed to the hazards of asbestos during his employment with defendant Reeves Brothers.
16. On 24 August 1995, plaintiff underwent a CT scan of the chest and a chest x-ray at Rowan Regional Medical Center. Dr. Dula never met plaintiff, reviewed any medical records relating to him, or discussed his case with any physician. He knew nothing about plaintiffs medical history prior to reviewing the diagnostic studies. Dr. Dula does not make a diagnosis in asbestosis cases and he did not diagnose plaintiff with asbestosis. He read plaintiffs chest x-ray on 24 August 1995 as showing no pathology. Dr. Dula felt the CT scan showed "non-specific interstitial findings, which he conceded were not diagnostic of any particular disease process. He indicated that he could not state to a degree of medical probability that plaintiffs nominal findings were consistent with asbestosis.
17. Plaintiff was referred to Dr. Gary Bullard, a board certified pulmonologist and member of the Industrial Commissions Advisory Panel for Occupational Diseases, for a complete pulmonary examination. Dr. Bullard examined plaintiff on 4 January 1999. He obtained an occupational history from plaintiff that he encountered asbestos with defendant-employers. Plaintiff never told Dr. Bullard he was exposed to respirable asbestos at any time during his employment and exposure to respirable particles is necessary to contract asbestosis. Dr. Bullard noted plaintiffs exposure history to be incomplete, since plaintiff had not mentioned anything about his employment at Mooresville Iron Works or that plaintiff had remodeled old houses for many years. Dr. Bullard performed a clinical examination of plaintiff, which revealed nothing to suggest plaintiff suffered from asbestosis. Dr. Bullard obtained a further chest x-ray and CT scan on 9 January 1999 and had these studies interpreted by Dr. Stuart Hartley, a radiologist. The chest x-ray revealed no significant pleural or pulmonary abnormality. Dr. Hartley interpreted plaintiffs CT scan as non-specific for asbestosis or other etiologies. Based on the information Dr. Bullard considered, he could not say to a reasonable degree of medical probability that plaintiff suffers from asbestosis. He noted that plaintiff had findings consistent with, but not diagnostic of, the disease.
19. Defendants had plaintiffs diagnostic studies from 24 August 1995 reviewed by Dr. Allen Hayes, a board certified pulmonologist and NIOSH certified B-reader. Dr. Hayes served as the examining physician on the Industrial Commissions Advisory Medical Committee for approximately 15 years, during which time he saw over 1,000 workers for evaluation of asbestosis and silicosis. According to Dr. Hayes, plaintiffs chest x-ray did not reveal findings consistent with asbestosis. Dr. Hayes also reviewed plaintiffs CT scan, which he felt did not disclose findings consistent with asbestosis. Furthermore, he reviewed plaintiffs pulmonary function tests from 1996 and 1999 and found those studies normal. Dr. Hayes and Dr. Bullards technician noted that plaintiff did not give maximum effort during the pulmonary function test in January 1999. Based upon his review of all available data, Dr. Hayes concluded that plaintiff does not have asbestosis.
20. Plaintiff saw Dr. Albert Curseen on 10 June 1996 on referral from plaintiffs attorney. Dr. Curseen is of the opinion that plaintiff suffers from asbestosis. However, Dr. Curseen based his opinion on an incomplete and inaccurate occupational history obtained from plaintiff and on a mistaken belief that Dr. Dula diagnosed the disease from the CT scan. In fact, Dr. Curseen misinterpreted Dr. Dulas CT scan report findings. Dr. Dula testified that he did not diagnose plaintiff with asbestosis. Furthermore, Dr. Curseen did not record a history that plaintiff had remodeled old houses for many years and may have had significant asbestos exposure in that manner. In addition, Dr, Curseen did not record a history of plaintiff cutting up old floor tile for Fiske Carter Construction or performing brake and clutch work on his vehicles and those of other people for many years.
21. Little weight is given to the testimony of Dr. Curseen, in that the occupational history, if any, he took from plaintiff was inaccurate and incomplete. Moreover, Dr. Curseen mistakenly and improperly relied on Dr. Dulas purported "diagnosis and CT scan findings. Finally, Dr. Curseens opinion is contrary to the greater weight of the other medical evidence of record, which is accordingly afforded greater weight.
22. Although plaintiff and his witnesses testified that plaintiff might have been exposed to respirable asbestos in his employment with defendant employers, that testimony is contrary to the greater weight of the evidence. The greater weight of the evidence fails to show that plaintiff was ever exposed to respirable asbestos in his employment.
23. Plaintiff has not contracted asbestosis or any other asbestos-related occupational disease.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Considering the greater weight of the evidence including plaintiffs lack of credibility concerning his exposure to respirable asbestos as well as the incomplete history given by him to the medical experts, plaintiff has failed to prove that he was exposed to respirable asbestos in the course and scope of his employment with defendant-employers. N.C. Gen. Stat. 97-2(6), 97-52, 97-53.
2. In addition, assuming arguendo that plaintiff was exposed to asbestos during his employment with defendant-employers, he has nevertheless failed to prove by the greater weight that any such exposure was injurious. N.C. Gen. Stat. 97-57.
3. Moreover, assuming arguendo that plaintiff was exposed to asbestos during his employment with defendant-employers, he nevertheless failed to produce evidence to a reasonable degree of medical probability that he suffers from asbestosis or any other asbestos-related disease as the existence of asbestosis cannot be presumed from exposure. In fact, the greater weight of the evidence, including the medical evidence, fails to establish that plaintiff has contracted asbestosis or any asbestos-related disease that is causally related to his employment with defendant-employers. Accordingly, plaintiff is not entitled to any benefits under the Act. Click v. Pilot Freight Carries, 300 N.C. 164,265 S.E.2d 389 (1980).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiffs claim must be and the same hereby is, DENIED.
2. Defendants shall pay the costs, including expert witness fees of $1,212.50 for Dr. Bullard, $650.00 for Dr. Curseen and $650.00 for Dr. Dula, if not already paid.
This the ___ day of March 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER